HELEN LINCK, Appellant, v. DORA LINCK (formerly VORHAUER) and EDWARD C. LINCK, her Husband.

Division One, November 25, 1908.

1. **ESTOPPEL: Ownership of Lot: Lis Pendens.** In an alienation suit, being one purely for damages, there is no place for the filing of a notice of *lis pendens;* and the plea that plaintiff, who seeks to have defendant divested of title to a house and lot, in that suit charged and affirmed by her testimony that defendant was the owner of the lot, is not sustained by the filing of a *lis pendens* in that suit, in which the notice itself does not declare the title to be in defendant except inferentially.

2. **SETTING ASIDE DEED: Fraud on Wife: Divorce: No Evidence.** A deed of trust signed by the wife cannot be set aside as a fraud against her, in that it was made to defeat her subsequent judgment for alimony against her husband, the other cograntor, and to defeat her judgment for damages for alienation of his affections against his subsequent wife, after divorce, who in the course of time came to be the owner of the property, by a simple showing that at the time the instrument was made, and long before the divorce was granted, the relations between her husband and the subsequent wife were immoral. If the deed of trust was made for a valid debt, was signed by the wife without any false representations as to the use the money was put to, or if there was at the time actual fraud yet the subsequent wife who is now the owner is not shown to have known of it or to have participated in it, but is shown to have bought from the purchaser at the foreclosure sale for a valuable consideration and to have had property of her own, the deed of trust cannot be set aside as being in fraud of the first wife's right.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

Affirmed.

*Henry H. Oberschelp* for appellant.

(1) As this is an equity case, the Supreme Court will consider the evidence and make its own decision, irrespective of the trial court's finding. St. Francis Mill Co. v. Sugg, 104 S. W. 45; Bates County Bank v. Gailey, 177 Mo. 181. (2) Those committing or in any wise assisting in any fraud never admit it, but do their utmost to conceal it and consequently its proof depends on circumstantial evidence, such as the situation of the parties and the circumstances surrounding the transactions and the conduct of the parties. Wait on Fraudulent Conveyances, pp. 13, 15, 16, 398, 402; New York Store Mer. Co. v. West, 107 Mo. App. 254. (3) Transactions between persons occupying fiduciary relations will be closely scrutinized. Lohman v. Stocke, 94 Mo. 674; Condit v. Maxwell, 142 Mo. 279; Williams v. Ger-

ber, 75 Mo. App. 18; Jones on Evidence, sec. 188. (4) As the defendant Mrs. Dora Linck, formerly Vorhauer, alleged as an affirmative defense that she was a bona fide purchaser for value without notice of the fraud, the burden of proof rested on her to prove it. Ins. Co. v. Smith, 117 Mo. 293. (5) As strong doubt of the integrity of the transaction was created, the duty of making a full explanation and the burden of proof to sustain the transfers rested with defendants. Wait on Fraudulent Conveyances, pp. 478, 479. (6) The failure of defendants to produce as a witness McKechnie, whom plaintiff did not know, but whom defendants admitted they knew and who appeared to be a friend of theirs and whose testimony would have been material to the issues, and the failure of the defendants to introduce other material witnesses and evidence, especially the man who was attorney for Ed. Linck, Dora Vorhauer (now Linck) and Archibald McKechnie and the Wall Paper Co., all the parties involved, raises a most unfavorable and damaging presumption against them. They knew such evidence would have been damaging to them, otherwise they would have produced it. Leeper v. Bates, 85 Mo. 228; Ins. Co. v. Smith, 117 Mo. 294. (7) As the $1,500 deed of trust recited that it was for a cash loan of that sum from the party of the third part, Frank C. Linck, to Edward Linck and as said Frank Linck and Ed. Linck both testified that said Frank Linck did not loan his said brother any money, but merely endorsed the note without recourse and delivered it back to Edward Linck, the entire transaction was fraudulent. Such transactions are declared fraudulent in their entirety, even where some money is loaned, but not the full value of the amount of the deed of trust. Bates County Bank v. Gailey, 177 Mo. 181; Cole v. Yancey, 62 Mo. App. 239. (8) As land bought in the wife's name is presumed to be bought with the husband's money, that same presumption applies with

still greater force where the title of the land is taken in the name of the husband's mistress to defeat the claims of the lawful wife. Halstead v. Mustion, 166 Mo. 488. (9) If defendant Dora Linck, formerly Vorhauer, had a knowledge of facts sufficient to excite the suspicions of a prudent person and put her on inquiry, she made herself a party to the fraud. Wait on Fraudulent Conveyances (3 Ed.), sec. 379; State to use v. Estel, 6 Mo. App. 6. (10) Even if the defendant Dora Linck, formerly Vorhauer, be regarded as an innocent purchaser, still as the deed transferring the property to her was only a quitclaim deed, aside from the *indicia* of fraud thus raised, her title is subject to all the equities in favor of the plaintiff. Condit v. Maxwell, 142 Mo. 278; Hope v. Blair, 105 Mo. 95.

*Ed. L. Gottschalk* for respondents.

Fraud will not be presumed, but must be shown by the party alleging it. Bank v. Brunswick, 155 Mo. 602; Bank v. Worthington, 145 Mo. 91; Peters v. Casebeer, 53 Mo. App. 640. There should be tangible and substantial facts in evidence tending to prove the issue of fraud to authorize the court to submit it to the jury. Thrasher v. Greene Co., 105 Mo. 244. It must be affirmatively proven. Martin v. Estes, 132 Mo. 403; Warren v. Ritchie, 128 Mo. 311.

GRAVES, J.—Plaintiff and defendant, Edward C. Linck, were husband and wife from 1879 to 1903, at which latter date they were divorced in a suit brought by the said Edward C. Linck, but upon the cross-bill filed by the wife, the plaintiff in this suit. By the decree of divorce alimony in gross in the sum of $1,000 was allowed Helen Linck. The other defend ant, Dora (Vorhauer) Linck, is the present wife of her co-defendant, whom he married very shortly after the decree of divorce above mentioned was granted. Not

only so, but it is practically certain that the relations of the two were not what they should have been for a long time prior to the decree of divorce and subsequent marriage.

Edward C. Linck was engaged in the wall-paper business in the city of St. Louis and at least for a time was prosperous. Prior to 1895 he had purchased the tract of land in dispute and built the house thereon. In so doing he procured $8,600 from the Hancock Building and Loan Association, which loan was secured by a deed of trust for said sum, which deed of trust provided for monthly payments of $86. This conveyance is not involved in the controversy. The present action is to cancel a second deed of trust for $1,500 given by Edward C. and Helen Linck to Frank Linck, a brother of Edward C. Linck, and afterwards foreclosed, and a trustee's deed made to one Archibald McKechnie, who thereafter deeds by quit-claim deed to Dora Vorhauer (now Linck.) The petition asks that all these three conveyances be cancelled and the property title be found to be in plaintiff under a sheriff's deed to her under an execution sale upon the judgment for alimony, wherein the property was sold as the property of Edward C. Linck. The petition charges that Helen Linck's signature was fraudulently procured to the $1,500 deed of trust by her husband, in this, that he represented that he wanted the money to pay off the first deed of trust, when, as she avers, he in fact wanted the deed of trust as a part and parcel of a fraudulent scheme upon his part to defraud her out of her claims for maintenance and alimony and to defraud, hinder and delay his creditors. This second deed of trust was made in 1895, and the sheriff's deed to plaintiff in May, 1904.

The answer of Edward C. Linck denies specifically the alleged fraudulent statements, and avers that on account of depression of business he had been running

behind and executed the second deed of trust which his wife Helen signed and used the money in discharge of the payments then due on the first deed of trust and other debts. He then avers that during his absence the said Helen induced the creditors to attach the property and business, thus rendering him unable to pay further, and that the foreclosure and other transactions followed as the natural sequence of her acts. He avers, and the evidence shows that Dora Vorhauer obtained deed in 1899. He avers that she paid the purchase price to McKechnie, and the balance due on the first mortgage, which balance was some $6,600, and that she has always since been in the possession of the property.

The defendant Dora Linck pleaded the same facts, also pleaded her ignorance of any fraud upon the part of Edward C., and that the purchase was in good faith. She further pleads that she was sued in the circuit court of the city of St. Louis by Helen Linck for the alienation of her husband's affections. That in said suit, plaintiff to enhance her damages, testified, as did her other witnesses, that the property in dispute belonged to this defendant and secured thereby a judgment of $2,500, and that after the affirmance of such judgment, she, this defendant, borrowed money on the property in dispute to pay the lien of this judgment and other prior liens thereon and did pay such judgment out of the money so procured, by which facts it is averred that the said Helen is now estopped from claiming that said property is that of the said Edward C. Linck and not the property of this defendant.

Replies were in the nature of general denials. The learned trial judge dismissed plaintiff's bill and entered judgment against her for costs, from which she duly appealed. The evidence in further detail will be taken up in the course of the opinion.

I.  As to the estoppel pleaded, it is not sufficiently grounded in facts to sustain the issue made by defendant Dora Linck. The only evidence in the record is a *lis pendens* filed by Helen Linck's attorney, containing this clause: "And the following described real estate, situated in the city of St. Louis, is liable to be affected thereby," then describing this and other real estate, and the testimony that the judgment in the alienation suit was paid off out of a deed of trust given on this property. The alienation suit was one brought for damages and not such a suit as contemplated the filing of a *lis pendens*. Helen Linck says that if such notice was given and filed by her attorney it was without her knowledge or authority. Again the language of the notice itself does not declare the title, except inferentially, to be in Dora Vorhauer. This plea of the defendant is not such as should be sustained and the point is ruled against her. The question might be different, although we do not decide it, had the case been such as called for a *lis pendens*. In an alienation suit, one purely for damages, there is no place for the filing of a notice of *lis pendens,* and it would require the express direction of plaintiff to bind her.

II.  Going to the merits of the case and eliminating the question of estoppel, was the decree *nisi* well founded? We think so. A very large portion of plaintiff's case consists of evidence tending to show improper relations between Edward Linck and Dora Vorhauer, which may be a mere circumstance tending to show a fraudulent scheme, but to say the least, it is of doubtful probative force under the charges in the petition. The alleged fraud perpetrated upon plaintiff in her language is thus stated: "I signed this deed of trust. I do not remember seeing any notes at the time. My husband told me he wanted to borrow money on a second deed of trust to pay off the first deed of trust and borrow the money from some outside party and

that is all the satisfaction he gave me. I relied upon that promise. I don't know whether or not he paid off that building association loan. I signed that deed of trust relying upon the promise he made me." All of this is flatly denied by the husband.

On cross-examination she says that there were six or seven attachments against Linck's property, for as many different debts, and that she knew these debts were due when she signed the deed of trust. Plaintiff's case is made solely upon this testimony as to the alleged fraudulent representation concerning this deed of trust, the alleged improper relation of Linck and Dora Vorhauer, and testimony showing that after the personal property was attached and sold, Linck managed the business. On the other hand it appears that Edward C. Linck sold this second mortgage which had been executed to Frank Linck to his brother Will Linck; that after the goods were attached Will Linck sold the mortgage and notes secured thereby to Archibald McKechnie, who afterwards foreclosed and bought in the property and several years later in August, 1899, sold to Dora Vorhauer; that with this money from McKechnie Will Linck, aided by his brother Frank Linck in a small way, purchased the property at the attachment sale; that after the sale, Will Linck, Frank Linck and McKechnie, who was a friend of Will Linck, but not of Edward Linck, incorporated the Linck Wall Paper Company, and Edward Linck was hired at $9 per week to manage the business in connection with Frank Linck; that thereafter the business was run in that name, the major interest being held by Will Linck, no interest being held by Edward Linck, and McKechnie collected the rents on the real property from the Linck Paper Company and other tenants for the three years or more he owned it. After the sale to Dora Vorhauer in 1899, which sale seems to have been brought about by Will Linck, she collected the

rents and was so doing at the time of this suit. Dora Vorhauer was shown to be a woman of some property. Edward C. Linck is not shown to have had any property after the attachment and sale of the stock of merchandise. Dora Linck is not shown in any way to have had any knowledge of the alleged fraudulent statements made by Edward C. Linck to his then wife, Helen Linck. Mrs. Helen Linck waits from 1895 to 1904 to sufficiently discover fraud to bring this action, and was then no doubt chafing under the sting of seeing her former husband marry the woman who had come between them. The personal conduct of Edward C. Linck and Dora Vorhauer, prior to their marriage, is not to be commended, if, indeed, their marriage, in good morals, could be commended. Yet, when all this evidence is reviewed, it strongly tends to show that Edward C. Linck was a practical bankrupt after his stock of goods was attached, and that the subsequent transactions were legitimate and in good faith. The evidence is at least consistent upon the theory of good faith and honesty. It evidently so struck the learned chancellor below. Complaint is urged here that McKechnie was not placed upon the witness stand by defendant. No showing is made as to whether he was dead or alive at the date of the trial. We hardly think this authorizes us to reverse this judgment. It devolved upon the plaintiff to first make a case, and were the evidence of defendants omitted, we have serious question of there being a prima facie case for plaintiff. However, under this record we do not have to say that no case was made by her proof. Further review of the details of the case can serve no good purpose. Upon the whole, the judgment *nisi* was correct and it will be affirmed. All concur.